IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTIAN SHANK,<br><br>    *Plaintiff,*<br><br>  v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,[1]<br><br>    *Defendant.* | CIVIL ACTION<br>NO. 16-1416 |

PAPPERT, J.                                                                              August 13, 2018

**MEMORANDUM**

      Christian Shank seeks judicial review of the Commissioner of Social Security's denial of his application for Supplemental Security Income under Title XVI and Disability Insurance Benefits under Title II of the Social Security Act. The Court referred the case to Magistrate Judge David R. Strawbridge for a Report and Recommendation. (ECF No. 13.) Upon consideration of Shank's Brief and Statement of Issues (ECF No. 11), the Commissioner's Response (ECF No. 12), Judge Strawbridge's R&R (ECF No. 15), Shank's Objections (ECF No. 16), the Commissioner's Response (ECF No. 18) and the administrative record, the Court overrules Shank's objections, denies his request for review and affirms the Commissioner's decision.

---

[1]     Nancy A. Berryhill became the Acting Commissioner for Social Security on January 23, 2017. Pursuant to Federal Rule of Civil Procedure 25(d), Berryhill should be substituted for the former Acting Commissioner, Carolyn W. Colvin, as the defendant in this action.

I

Shank applied for benefits on September 1, 2012 and November 13, 2012, respectively, with a disability onset date of November 5, 2012.[2] (Administrative Record ("R.") at 12, 43–44, 89, 101.) He was forty-two years old at the time and lived at home with his parents and two sons. (R. at 39, 49.) Shank has his GED and completed "about a year of college." (R. at 39.) He has previously worked as a carpenter foreman and laborer doing "concrete formwork for industrial and commercial buildings." (R. at 40–41, 300–06.) When Shank began having problems doing construction work, he obtained his CDL license and worked as a tractor trailer driver. (R. at 41–43.) However, driving tractor trailers "just caused a whole bunch of other problems." (R. at 43.) Shank stopped working around May 2012 when "[t]he pain and the physical issues that [he] experienced from trying to do those things, it just became impossible to bear[.]" (R. at 42.)

Shank seeks disability benefits due to a number of impairments, including a torn right rotator cuff, arthritis in his back and neck, knee problems, severe arthritis in both ankles, a torn tendon in his left ankle and a dislocated right ankle. (R. at 90, 102, 251.) Shank has had a number of surgeries over the years, including three to his left ankle, one to his right hand, and one to his rotator cuff. He also had a right foot reconstruction. (R. at 787, 993.) He suffers from chronic pain and has a history of opioid dependence. (R. at 34–35, 930, 1115.)

Shank's applications were denied on April 23, 2013 and he thereafter requested a hearing before an Administrative Law Judge. (R. at 125–28, 129–33.) ALJ Scott M.

---

[2] Shank originally alleged an onset date of May 30, 2012 but amended the onset date at the hearing. (R. at 43–44.)

Staller conducted a hearing on September 9, 2014 at which Shank, medical expert Dr. John Anigbogu, and vocational expert Michael Kibler testified. (R. at 30–60.) After considering the evidence and applying the five-step sequential evaluation process,[3] the ALJ determined that Shank was not "disabled" as defined by the Social Security Act and denied relief on October 16, 2014. (R. at 9–29.)

At step one, the ALJ concluded that Shank had not engaged in substantial gainful activity since November 5, 2012, the alleged onset date. (R. at 14.) At step two, the ALJ found that Shank suffers from a number of severe impairments, including chronic pain syndrome, degenerative joint disease of the shoulders, osteoarthritis of the feet and ankles, degenerative joint disease of the cervical spine and lumbar spine, insomnia and a history of chronic obstructive pulmonary disease. (R. at 14.) At step three, the ALJ determined that Shank's impairments did not meet or medically equal the severity of one of the listed impairments, specifically Listing 1.02 Major Dysfunction of a Joint(s) or Listing 1.04 Disorders of the Spine. (R. at 15–16.)

At step four, the ALJ found that Shank had the residual functional capacity ("RFC") to perform sedentary work, except that he needs the ability to alternate

---

[3] The Commissioner has established a five-step process to determine whether claimants are disabled. 20 C.F.R. § 416.920(a). At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity." *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004) (citation omitted); 20 C.F.R. § 416.920(b). If not, the ALJ proceeds to step two where he or she must determine whether the claimant has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." *Ramirez*, 372 F.3d at 550 (citation omitted); 20 C.F.R. § 416.920(c). If the claimant successfully demonstrates a "severe impairment," the ALJ proceeds to step three to assess whether the impairment meets or medically equals one of the listed impairments; if so, the claimant qualifies for disability. *Ramirez*, 372 F.3d at 550–51 (citation omitted); 20 C.F.R. §416.920(d). If, however, the impairment does not meet or medically equal a listed impairment, the inquiry proceeds to step four where the ALJ determines whether the claimant has the "residual functional capacity" (RFC) to perform any prior relevant work. *Ramirez*, 372 F.3d at 551; 20 C.F.R. §416.920(e). If the claimant can perform any prior relevant work, he or she will not be found disabled. *Ramirez*, 372 F.3d at 551. If not, the fifth step requires the ALJ to consider "vocational factors" (age, education and past work experience) to determine whether the claimant is capable of performing other jobs existing in the national economy. *Id*. (citing 20 C.F.R. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c)).

between sitting and standing every five to ten minutes. (R. at 16.) The ALJ further found that Shank was able to push and pull with his upper and lower extremities frequently, climb ramps and stairs occasionally, balance, stoop, kneel and crouch occasionally and reach overhead occasionally. (R. at 16.) He found that Shank is unable to crawl or climb ladders, ropes or scaffolds. (R. at 16.) Finally, he found that Shank should avoid concentrated exposure to excessive vibrations, the operational control of moving machinery and unprotected heights. (R. at 16.) Given this RFC, the ALJ concluded that Shank could not perform his past relevant work as a construction worker or tractor trailer truck driver. (*Id*. at 22–23.) At step five, however, the ALJ found that Shank's RFC permits him to work jobs that exist in significant numbers in the national economy, for example, as a table worker or final assembler. (R. at 23.) The ALJ thus found that Shank was not disabled within the meaning of the statute and not entitled to benefits. (R. at 24.)

The ALJ's decision became final after the Appeals Council denied Shank's request for review on February 18, 2016. (R. at 1–5.) *See* 20 C.F.R. §§ 404.972, 416.1472. Shank filed this action on March 28, 2016, seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). (ECF Nos. 1 & 3.) Shank argued that: (1) the ALJ erred by finding that he did not meet or medically equal a listed impairment, (2) the RFC was not supported by substantial evidence, (3) the ALJ's assessment of the medical evidence was not supported by substantial evidence, and, finally, (4) the ALJ's credibility assessment was not supported by substantial evidence. (*See* Pl.'s Br., ECF No. 11.)

4

Judge Strawbridge issued his R&R on January 26, 2018. (ECF No. 15.) He rejected each of Shank's arguments and recommended that the Commissioner's decision denying disability be affirmed. (*Id.*) Shank raises various objections to Judge Strawbridge's R&R which the Court overrules for the reasons that follow.

II

Upon designation, a magistrate judge may conduct hearings and submit proposed findings of fact and recommendations to a judge of the court for disposition. 28 U.S.C. § 636(b)(1)(B); *Dries v. Berryhill*, No. 16-CV-01014, 2017 WL 4922011, at *2 (M.D. Pa. Oct. 31, 2017). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When no objections are made to the R&R, "the court should, as a matter of good practice, 'satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Latorre v. Wetzel*, No. 15-cv-280, 2016 WL 3014874, at *1 (E.D. Pa. May 26, 2016) (quoting Fed. R. Civ. P. 72(b), advisory committee notes); *see also Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987) (explaining that judges should give some review to every Report and Recommendation). For the portions of the R&R to which neither party objected, no clear error appears on the face of the record and the Court accordingly accepts Judge Strawbridge's report.

The Court reviews *de novo* the specific portions of the R&R to which a party objects. *See* 28 U.S.C. § 636(b)(1); *see also Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011). The Court's role on review is to determine whether the ALJ's determinations were supported by substantial evidence. 42 U.S.C. § 405(g); *see also Rutherford v.*

5

*Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).  Substantial evidence is evidence which a "reasonable mind might accept as adequate to support a conclusion."  *Rutherford*, 399 F.3d at 552 (internal quotation marks and citation omitted).  "It is 'more than a mere scintilla but may be somewhat less than a preponderance of the evidence.'"  *Id*. (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)).

In reviewing the ALJ's decision, the Court is not permitted to reweigh the evidence or substitute its own conclusions for those reached by the ALJ.  *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) (citation omitted).  "The ALJ resolves conflicts in the evidence, determines the evidence's credibility, and assigns the appropriate weight to be given such evidence."  *D'angelo v. Colvin*, No. 14-6594, 2016 WL 930690, at *2 (E.D. Pa. Mar. 11, 2016) (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999); *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 2004)).  "If the ALJ's decision is supported by substantial evidence, the Court may not set it aside even if the Court would have decided the factual inquiry differently."  *Santiago v. Barnhart*, 367 F. Supp. 2d 728, 732 (E.D. Pa. 2005) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)).

III

A

Shank objects to Judge Strawbridge's conclusions that the ALJ's step three findings, specifically that Shank did not meet Listing 1.02A or Listing 1.04A, were supported by substantial evidence.  To meet Listing 1.02A, the claimant's condition must involve one major weight bearing joint and result in an inability to ambulate effectively.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02(A).  A claimant can ambulate

effectively if he can sustain "a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B)(2)(b)(2). The inability to ambulate effectively is defined as "an extreme limitation in the ability to walk" and "generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id*.

The ALJ found that Shank did not meet listing 1.02A and his decision was supported by substantial evidence. (R. at 15.) The ALJ explained that while Shank has at times used crutches, he is not reliant on any ambulatory aid. (R. at 15.) He further noted that Shank repeatedly presented with 5/5 strength in his lower extremities and intact sensation. (R. at 15.) These findings are supported by the record and support the ALJ's conclusion that Shank does not meet listing 1.02A. (*See, e.g.*, R. at 278 (indicating Shank uses crutches "part-time"), 429 (noting limited motion in Shank's ankles but no acute distress, intact sensation and 5/5 strength in his tibialis anterior (shin muscle)), 453 (noting Shank has pain in left ankle but a nonantalgic gait, no calf pain upon inflexion of ankle and is able to perform double stance heel raise); 631 (noting pain in ankles but lower extremities were 5/5 in strength with no sensory deficits); 796 (noting full strength in lower extremities); 913 (noting gait and sensory exam normal).) Shank's argument that the record "establishes issues with ambulation" amounts to a request for the Court to reweigh the record evidence and thus his objection is overruled.[4]

---

[4] Shank also argues that the ALJ erred because he did not consider whether Shank could sufficiently ambulate to carry out activities of daily living in light of Shank's testimony that he is unable to walk for long periods of time. (Pl.'s Objs. at 1–2.) However, the ALJ gave Shank's testimony regarding his alleged functional limitations no weight. *See Halloran v. Berryhill*, 290 F.

Similarly, the ALJ's conclusion that Shank did not meet Listing 1.04 was supported by substantial evidence. The relevant section of Listing 1.04 requires that the claimant have a spinal disorder resulting in nerve root compression, limitation of motion, motor loss accompanied by sensory or reflex loss, and positive straight-leg raising tests.[5] 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04(A). "For a claimant to show his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Jones v. Barnhart*, 364 F.3d 501, 504 (3d Cir. 2004) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).

The ALJ found that while Shank has disc degeneration, (R. at 15, 1249), he consistently presented with negative straight leg raises, normal strength in his extremities, symmetrical reflexes and no sensory deficits, (R. at 15, 18–20). These findings were supported by substantial evidence. (*See, e.g.*, R. at 631 (straight leg test negative, normal strength in lower extremities and no sensory deficits), 796 (symmetric reflexes and normal sensory examination), 1129 (straight leg test negative, sensation intact light to touch, reflexes symmetrical and no motor deficits).) While Shank points to medical evidence to argue that he meets some of the criteria, he does not point to evidence to refute the ALJ's finding that he fails to meet all of the necessary criteria. (*See* Pl.'s Br. at 14–15; Pl.'s Objs. at 2–3.) In fact, the records he relies on note

---

Supp. 3d 307, 318 (M.D. Pa. 2017) ("[T]here is no particular language or format that an ALJ must use so long as there is 'sufficient development of the record and explanation of findings to permit meaningful review.'") (citing *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)).

[5]     Listing 1.04 contains three sub-parts, but Shank's argument pertains exclusively to Listing 1.04(A). (*See* Pl.'s Br. at 14.)

symmetric reflexes, normal sensory examination and no obvious motor deficits. (R. at 796, 1129.)

B

Shank next objects to Judge Strawbridge's finding that the ALJ's treatment of the opinion evidence was supported by substantial evidence. (Pl.'s Objs. at 3–4.) Specifically, Shank argues that Dr. Keith Fleischman's opinions, as those of a treating podiatrist, should have been given more weight while Dr. Hong Park's opinions, as a non-examining physician, should have been given less weight. (*Id.*)

Generally, the opinions of treating medical professionals are given more weight than those of non-treating or non-examining medical professionals. 20 C.F.R. § 416.927(c)(2); 20 C.F.R. § 404.1527(c)(2); *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) ("A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight[.]"). If a treating professional's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence," it is afforded controlling weight. 20 C.F.R. § 416.927(c)(2); 20 C.F.R. § 404.1527(c)(2). If, however, the opinion does not meet this standard, the ALJ will determine how much weight the opinion should be given after considering: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidentiary support for the opinion; (4) the consistency with the remainder of the record; and (5) whether the medical issues in question are related to the physician's area of specialty. 20 C.F.R. § 416.927(c)(1)–(5); 20 C.F.R. § 404.1527 (c)(1)–(5).

Further, where "the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Morales*, 225 F.3d at 317 (quoting *Plummer*, 186 F.3d at 427); *see also Brown v. Astrue*, 649 F.3d 193, 196 (3d Cir. 2011) ("'[The] ALJ is not bound to accept the opinion or theory of any medical expert, but may weigh the medical evidence and draw [his or her] own inferences.'" (quoting *Kertesz v. Crescent Hills Coal Co.*, 788 F.2d 158, 163 (3d Cir. 1986))). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (internal quotations omitted).

The record contains five medical opinions. Dr. Park opined that Shank could perform a range of sedentary work. (R. at 95–97, 107–09.) Dr. Anigbogu testified at the administrative hearing that Shank could perform a range of light work. (R. at 36.) Dr. Fleischman opined that Shank could not perform sedentary work on a full-time basis, would miss more than four days of work per month, and would constantly have symptoms that would interfere with his ability to concentrate. (R. at 1266–70.) The remaining two opinions found that Shank was temporarily disabled from November 2012 – 2013 and April 2013 – 2014, respectively. (R. at 413–14, 760–62.) The ALJ relied on Dr. Park and Dr. Anigbogu's opinions to conclude that Shank could perform a range of sedentary work. (R. at 21.) He did not uncritically adopt either opinion, and included additional limitations in the RFC where supported by the record. (R. at 21.)

The ALJ, however, rejected several of the limitations specified by Dr. Fleischman and gave his opinion limited weight. (R. at 21.)

Shank's argument regarding the weight given to Dr. Park's opinion is meritless. Shank merely contends that Dr. Park deserved less than the substantial weight assigned by the ALJ because he was a non-examining physician. (Objs. at 4.) This is at odds with Third Circuit precedent which allows the ALJ to weigh the medical evidence and decide which experts' opinions to credit, including whether to credit state agent opinions which "merit significant consideration." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).

Shank also argues that the ALJ erroneously rejected Dr. Fleischman's opinion. (Pl.'s Objs. at 3.) The ALJ rejected the severe limitations in Dr. Fleischman's opinion because they were "not supported by the medical evidence of record as a whole." (R. at 21.) Specifically, the ALJ found that the limitations were not supported by treatment records that indicated a normal gait and full strength and intact sensation in Shank's upper and lower extremities. (R. at 21.) The ALJ's decision to give Dr. Fleischman's opinion limited weight was supported by substantial evidence. (*See e.g.*, R. at 453 (nonantalgic gait); 631 (lower extremities were 5/5 in strength with no sensory deficits); 796 (full strength in lower extremities); 913 (gait and sensory exam normal); 1177 (sensation intact, full strength and symmetrical reflexes).)

Shank contends that Dr. Fleischman's opinion should have been given more weight because the limitations were in fact supported by the record. (Pl.'s Objs. at 3.) However, the only medical records Shank points to as supportive of Dr. Fleischman's opinions are March 25, 2014 treatment notes. (*Id.*) As Judge Strawbridge pointed out,

11

however, those records are not reflective of the medical record as a whole and more accurately evidence an isolated "cry for help."[6] (R. at 1036.) The Court was unable to find any other support in the nearly one thousand pages of medical records for the severe limits on concentration and attendance recommended by Dr. Fleischman.[7]

Shank further contends that the ALJ had a duty to recontact Dr. Fleischman if he had doubts about the basis of Dr. Fleischman's opinions. (Pl.'s Objs. at 3.) The regulations provide that an ALJ may recontact a medical source for clarification, if such clarification is needed to make the disability determination. *Harris v. Berryhill*, No. 16-6171, 2017 WL 4854110, at *7 (E.D. Pa. Oct. 3, 2017), report and recommendation adopted, No. 16-6171, 2017 WL 4844830 (E.D. Pa. Oct. 25, 2017); *Gladden ex rel. v. Berryhill*, No. CV 17-1832, 2018 WL 1123763, at *6 (E.D. Pa. Feb. 28, 2018) ("There is no obligation to recontact a medical source when the ALJ finds that the record as a whole provides an adequate basis to determine whether the claimant is disabled.") Further, "SSR 96–5p requires re-contact only when both: (1) the record fails to support a treating source's opinion; and (2) the basis of the treating source's opinion is unascertainable from the record." *Ross v. Colvin*, No. 14-0990, 2015 WL 1636132, at *9 (M.D. Pa. Apr. 8, 2015); *Hartman v. Colvin*, No. 02:13-CV-00265-TFM, 2014 WL 1784084, at *9 (W.D. Pa. May 5, 2014) ("[T]he duty to recontact is triggered only when the treating source's opinions are not clear.") (citations and modification omitted).

---

[6] Judge Strawbridge notes that Shank overdosed on Vicodin, when in fact Shank overdosed on Ambien. (R. at 1036, 1046.)

[7] Shank also cites to his hearing testimony. (Pl.'s Objs. at 3.) However, as previously stated and as addressed below, the ALJ found Shank's testimony regarding his alleged limitations not credible. (R. at 22.)

After thoroughly reviewing the record, including extensive medical records and various medical opinions, and conducting a hearing at which Shank testified, the ALJ concluded that the record was sufficient and rendered a determination that was supported by substantial evidence. *See Cradle v. Colvin*, No. 13-4360, 2014 WL 6633201, at *3 (E.D. Pa. Nov. 24, 2014). The ALJ did not express confusion about the basis of Dr. Fleischman's opinions. Rather, he concluded that the limitations were unsupported by Shank's treatment records. The ALJ's conclusion in this regard is supported by substantial evidence. The ALJ had no obligation to recontact Dr. Fleischman and Shank's objection is overruled.

C

Finally, Shank argues that the ALJ erred in concluding that he was not entirely credible. (Pl.'s Objs. at 4–5.) "[A]lthough 'testimony of subjective pain and inability to perform even light work is entitled to great weight,' an ALJ may nonetheless reject a claim of disabling pain where he 'considers the subjective pain and specifies his reasons for rejecting these claims and supports his conclusion with medical evidence in the record.'" *Harkins v. Comm'r of Soc. Sec.*, 399 F. App'x 731, 735 (3d Cir. 2010) (quoting *Matullo v. Bowen*, 926 F.2d 240, 245 (3d Cir. 1990); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979)). Further, in determining whether there is substantial evidence to support an ALJ's decision, courts owe deference to the ALJ's assessment of the credibility of witnesses. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009); *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003) (citation omitted) (The Court "ordinarily defer[s] to an ALJ's credibility determination because he or she has the opportunity at a hearing to assess a witness's demeanor.").

13

Although acknowledging that Shank suffers from chronic pain, the ALJ found that Shank's complaints relating to the intensity, persistence and limiting effects of his conditions were not entirely credible. (R. at 16–17.) More specifically, the ALJ gave Shank's allegations regarding the limiting effects of his conditions no weight. (R. at 22.) The ALJ's decision was supported by substantial evidence.[8] The medical evidence of record did not support Shank's complaints of disabling pain: Shank was found to present with a non-antalgic gait, normal sensation, full strength in his extremities, symmetrical reflexes and negative straight leg tests. (R. at 429, 453, 631, 796, 913, 1129.) Further, the ALJ relied on treatment notes stating that Shank "stopped physical therapy and joined a gym, where [he] is able to tolerate recumbent biking and light weightlifting." (R. at 22, 912.) Shank's final objection is thus overruled.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

---

[8] To the extent that the ALJ committed error by relying on Shank's failure to stop smoking, *compare Haseler v. Acting Comm'r of Soc. Sec.*, 33 F. App'x 631, 635 (3d Cir. 2002) (considering claimant's decision to smoke at least one pack of cigarettes per day against her physician's advice in assessing claimant's credibility), *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000) (affirming ALJ's finding that claimant's subjective complaints of pain and asthma were not credible in light of her continued smoking habit), *and Shelton v. Comm'r of Soc. Sec.*, No. 11-573, 2013 WL 23868, at *1 (W.D. Pa. Jan. 2, 2013) (affirming Commissioner's denial of benefits where ALJ considered claimant's continued smoking in credibility determination), *with Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000) ("[E]ven if medical evidence had established a link between smoking and her symptoms, it is extremely tenuous to infer from the failure to give up smoking that the claimant is incredible when she testifies that the condition is serious or painful."), the error was harmless because substantial evidence supports the ALJ's credibility determination. Thus Shank's disability determination was not affected and remand unwarranted. *See Williams v. Barnhart*, 87 F. App'x 240, 243 (3d Cir. 2004).